## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KENNETH MAXEY,

     Petitioner,               CASE NO. 2:14-CV-12979
                             HONORABLE PAUL D. BORMAN
v.                           UNITED STATES DISTRICT JUDGE

STEVEN RIVARD,

     Respondent.
_____/

## OPINION AND ORDER DENYING (1) THE PETITION FOR A WRIT OF HABEAS CORPUS, (2) A CERTIFICATE OF APPEALABILITY, AND (3) LEAVE TO APPEAL *IN FORMA PAUPERIS*

Kenneth Maxey, ("petitioner"), incarcerated at the Chippewa Correctional Facility in Kincheloe, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for two counts of assault with intent to do great bodily harm less than murder, M.C.L.A. § 750.84; two counts of assault with a dangerous weapon, M.C.L.A. § 750.82; discharge of a firearm at a building, M.C.L.A. § 750.234; possession of a firearm by a felon, M.C.L.A. § 750.224f; and possession of a firearm during the commission of a felony, M.C.L.A. § 750.227b. For the reasons stated below, the petition is DENIED WITH PREJUDICE.

1

## I. BACKGROUND

Petitioner was convicted of the above offenses following a jury trial in the Wayne County Circuit Court and was acquitted of assault with intent to commit murder.

Petitioner was friends with Shron Bennett ("Shoney"), Dyrric Dunbar, and Adam Handley. (Tr. 8/31/2009, p. 18). Handley, Bennett, and another friend of theirs got into a fight in the summer of 2008 with Christopher Sims over a girl. The fight progressed to the point that Bennett pulled out a gun. (*Id.* at 19-20). Bennett warned Christopher and his brother Timothy Sims that "next time he sees [them] there's gonna be bloodshed and bullets." (*Id.* at 21). On several subsequent occasions, Bennett made shooting gestures at the Sims brothers. (*Id.* at 21-22).

On April 18, 2009, Christopher was driving in his car with his cousin Derek Martin. When the men pulled up to a stoplight, petitioner walked up to the car. As he approached the car, petitioner placed his hand under his shirt as though he was reaching for a gun. (*Id.* at 24-26, 55). Christopher Sims told Martin "that was Kenny, pull off." (*Id.* at 28). Although Christopher did not actually see a weapon, Martin saw a black handgun. (*Id.* at 30; Tr. 9/1/09, pp. 5-6, 17). Martin drove away and the two men went to Christopher's home. (Tr. 8/31/09, pp. 29-30).

Martin and Christopher later left the house to pick up Martin's girlfriend

Ronata Brown. (*Id.* at 30-32). Timothy Sims was on the porch of the house. Renea Sims, his mother, later returned home, after hearing about the earlier encounter between the men. (*Id.* at 78-81, Tr. 9/1/2009, p. 32). While Timothy Sims was out on his porch, he was approached by a neighbor, who informed Sims that a couple of men were in the backyard of Timothy's house. Timothy and his mother went to the backyard to check. (Tr. 8/31/2009, pp. 81, 114). Timothy noticed two men walking in the alley behind the house. (*Id.* at 83). Timothy informed his mother, Renea. Renea, afraid that the men were there to steal Timothy's car from the backyard, told him to go to the front of the house and call the police. (*Id.* at 84; Tr. 9/1/09, p. 38). While Timothy was doing so, he ran into Derek Dunbar in the front of the house, who was walking up the driveway. (*Id.*) Dunbar was wearing a dark hoodie. Timothy Sims testified that Dunbar stopped, pulled out a black nine millimeter handgun, and began shooting toward the front porch. (Tr. 8/31/09, pp. 84-87). Renea Sims later testified that one of the two men in the backyard said "there's one of them right there," before the two men began shooting. The shots missed Renea's head as she ran and hid behind Timothy's car. (Tr. 9/1/09, pp. 39, 68).

Just before the shooting started, Christopher Sims and Martin pulled up with Brown, at around 10:00 p.m. As they were walking toward the house, they saw

someone wearing a hoodie. Christopher asked, "who was that," at which point a man began shooting. Brown, Martin, and Christopher ran up the walkway to Christopher's backyard. Timothy was standing on the porch at that time, as was a Mr. Ealy. Renea was hiding behind a car in the backyard. Christopher heard a large number of shots, including shots coming from the back of his house. Christopher, Martin, and Brown all went into the house. By the time they got inside, the shots stopped. (*Id.* at 32-36, 87).

Renea, still hiding behind Timothy's car, looked in the alley around this time and saw that Shron Bennett was one of the gunmen. (Tr. 9/1/09, pp. 43, 47). Renea identified petitioner as the second gunman behind the house, "with a gun on his side" and with "a long bullet clip in the bottom of it." (*Id.* at 45-48).

During a break in the shooting, Christopher went into his backyard to bring his mother into the house. As Christopher did so, the shots started up again. By the time that Christopher and his mother got into the house, the shots stopped again. (Tr. 8/31/09, pp. 36-37). Christopher saw two shadows in the backyard running down the alley behind his house. (*Id.* at 37, 64).

Petitioner's conviction was affirmed on appeal, although his case was remanded for re-sentencing. *People v. Maxey*, No. 294418, 2011 WL 668368 (Mich. Ct. App. Feb. 24, 2011); *reconsideration den.,* No. 294418 (Mich. Ct. App.

Apr. 21, 2011)*; lv. den.* 490 Mich. 903, 804 N.W. 2d 561 (2011)*.*

Petitioner filed a post-conviction motion for relief from judgment, which was denied. *People v. Maxey,* No. 09-12497-FC (Wayne County Cir. Ct., May 24, 2013). The Michigan appellate courts denied petitioner leave to appeal. *People v. Maxey,* No. 316917 (Mich. Ct. App. May 2, 2014); *lv. den.* 845 N.W.2d 741 (2014).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Petitioner should be granted a new trial because his attorney was ineffective in failing to obtain his medical records showing that, contrary to the trial testimony, he was not capable of running, and in failing to call witnesses on behalf of petition[er].

II. Petitioner is entitled to resentencing because the statutory sentencing guidelines were misscored as to offense variable 10, which affected (sic) the sentencing guideline range.

III. The trial court violated petitioner's constitutional right to a public trial by closing the courtroom for jury selection / voir dire, and defense counsel was constitutionally ineffective in failing to object.

IV. Wayne County's unconstitutional practice of assigning counsel on the exact day of the preliminary examination, which has already been federally condemned, constitutes a state impediment to the effective assistance of counsel and effectively served to constructively deprive Petitioner Maxey of his right to counsel at all critical stages of the judicial proceedings...[requiring reversal due to structural error].

V. The trial court erred reversibly in instructing the jury on felonious assault, which is a cognate lesser included offense of assault with intent to murder.

VI. Appellate counsel's failure to pursue issues 3, 4, and 5 [herein] constituted ineffective assistance of appellate counsel in violation of his Sixth Amendment [rights] and this was cause for petitioner['s] failure to raise these issues on his direct appeal and resulted in actual prejudice to petitioner.

## II.  STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs

when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

## III. DISCUSSION

### A. Claim # 1. The ineffective assistance of trial counsel claims.

Petitioner claims he was denied the effective assistance of trial counsel.

To show that he was denied the effective assistance of counsel under federal

constitutional standards, a defendant must satisfy a two-prong test. First, the

defendant must demonstrate that, considering all of the circumstances, counsel's

performance was so deficient that the attorney was not functioning as the

"counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466

U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong

presumption that counsel's behavior lies within the wide range of reasonable

professional assistance. *Id.* In other words, petitioner must overcome the

presumption that, under the circumstances, the challenged action might be sound

trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that

such performance prejudiced his defense. *Id.* To demonstrate prejudice, the

defendant must show that "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different."

*Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one.

'The likelihood of a different result must be substantial, not just conceivable.'"

*Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 562

U.S. at 112). The Supreme Court's holding in *Strickland* places the burden on the

defendant who raises a claim of ineffective assistance of counsel, and not the state,

to show a reasonable probability that the result of the proceeding would have been

different, but for counsel's allegedly deficient performance. *See Wong v.*

*Belmontes*, 558 U.S. 15, 27 (2009).

On habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. at 101. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "a state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

Because of this doubly deferential standard, the Supreme Court has

9

indicated that:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 562 U.S. at 105.

In addition, a reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 563 U.S. 170, 196 (2011).

This Court is aware that "relying on 'the harsh light of hindsight' to cast doubt on a trial that took place" eight years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Harrington v. Richter*, 562 U.S. at 107.

Petitioner first claims that trial counsel was ineffective for failing to present medical records showing that petitioner had been shot in the knee four months before the shooting. Petitioner claims that these medical records would have shown that he was incapable of running at the time of the shooting and hence could not have been one of the shooters who ran from the crime scene.

The Michigan Court of Appeals rejected petitioner's claim as follows:

In the instant case, the medical records indicate only that defendant was shot in to his left knee-the records provide no indication that defendant's injury made it impossible for him to run from a crime scene four months later. Accordingly, counsel may have determined that the evidence lacked sufficient probative value. Alternatively, trial counsel may have reasonably considered the medical records too prejudicial given that they reveal defendant's involvement in another shooting and daily marijuana use. Whatever the case, we cannot conclude that counsel's decision to attack the eyewitness's ability to accurately perceive the incident rather than introduce the medical records for this purpose fell below an objective standard of reasonableness. Moreover, defendant has not shown the alleged error was prejudicial. Without an indication that the gunshot wounds actually prevented defendant from running four months later, there can be no reasonable probability that the jury would have discarded the eyewitness's testimony that she saw defendant run up the alley because it was fabricated or otherwise inaccurate and acquitted defendant on that basis.

*People v. Maxey*, 2011 WL 668368, at *2.

Counsel was not ineffective in failing to introduce the medical records because nothing in these records would indicate that the injury to petitioner's knee made it impossible for him to run. *See e.g. Barnes v. Elo*, 339 F.3d 496, 502–03 (6th Cir. 2003). Petitioner is not entitled to relief on this claim.

Petitioner next contends that trial counsel was ineffective for failing to call his codefendant, Shron Marion Bennett, to testify that petitioner was not present at the time of the shooting.

The Michigan Court of Appeals rejected petitioner's claim as follows:

Similarly, defendant has not shown counsel seriously erred by failing

11

to call codefendant Bennett to testify that defendant was not present when the shooting occurred. First, defendant has not established that Bennett would have testified regarding defendant's absence from the crime scene. In his guilty plea made during the second day of trial, Bennett never said defendant was not at the crime scene, nor has he signed any affidavit to that effect. Further, calling Bennett to the stand would have been a last minute decision. Because Bennett maintained his constitutional right to remain silent and not testify until he pleaded guilty the second day into trial, counsel may have thought it too risky to call him without adequate preparation. In addition, given Bennett's long friendship with defendant, counsel may have decided that the testimony was not sufficiently trustworthy and that, as a matter of trial strategy, the better option was to attack the eyewitness's ability to perceive the events. Again, defendant has not excluded these possibilities or shown a reasonable probability that the jury would have acquitted him had Bennett testified.

*People v. Maxey*, 2011 WL 668368, at *2.

The Michigan Court of Appeals' decision was not unreasonable. Mr. Bennett was preparing to go to trial with petitioner. Mr. Bennett did not plead guilty until the second day of trial. Had Mr. Bennett gone to trial, he could have invoked his Fifth Amendment right against self-incrimination if called to testify. Defense counsel could therefore have reasonably determined at the beginning of petitioner's trial that it would not be in petitioner's best interest to call him as a defense witness. *See e.g. Davis v. Lafler,* 658 F.3d 525, 537 (6th Cir. 2011). Although Mr. Bennett pleaded guilty on the second day of trial, he did not indicate during the plea hearing that petitioner was not involved in the shooting. The

Court declines to find that Counsel was ineffective in failing to investigate possible testimony of petitioner's codefendant, because Petitioner has not shown that counsel had any indication at the time of trial that Mr. Bennett would have testified in a way that would have benefitted petitioner's case. *See e.g. Watkins v. Lafler*, 517 F.App'x 488, 498 (6th Cir. 2013).

Petitioner finally contends that trial counsel was ineffective for failing to subpoena key witnesses to refute Renea Sims's trial testimony.

Petitioner does not provide the names of the other witnesses, nor has he provided the Michigan courts or this Court with any affidavits from these witnesses concerning their proposed testimony and willingness to testify on petitioner's behalf. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). By failing to present any evidence to the state courts in support of his ineffective assistance of counsel claim, petitioner is not entitled to an evidentiary hearing on that claim before this Court. *See Cooey v. Coyle*, 289 F.3d 882, 893 (6th Cir. 2002)(citing 28 U.S.C. § 2254(e)(2)(A)(ii)). Petitioner has not offered either to the Michigan courts or to this Court any evidence beyond his own assertions as to the identity of the witnesses, whether the witnesses would have been able to testify, or as to the

contents of these witnesses' testimony. In the absence of such proof, petitioner is unable to establish that he was prejudiced by counsel's failure to call these alleged witnesses to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller,* 490 F.3d 551, 557 (6th Cir. 2007). Petitioner is not entitled to relief on his first claim.

**B. Claim # 2. The sentencing guidelines claim.**

Petitioner contends that his Michigan Sentencing Guidelines were incorrectly scored as to Offense Variable 10, which effected the statutory sentencing guideline range.

Errors in the application of the state sentencing guidelines cannot independently support habeas relief. *See Kissner v. Palmer*, 826 F.3d 898, 904 (6th Cir. 2016). Petitioner's claim that the state trial court improperly departed above the correct sentencing guidelines range by scoring points for OV 10 thus does not entitle him to federal habeas relief, because he has failed to demonstrate that such a departure violated any of his federal due process rights. *Austin v. Jackson*, 213 F.3d 298, 301 (6th Cir. 2000).

**C. Claim # 3. The denial of public trial/ineffective assistance of counsel claim.**

Petitioner contends that his right to a public trial was violated when the

judge closed the courtroom for jury selection, resulting in a structural error. In the alternative, petitioner argues that trial counsel was ineffective for failing to object to the closure of the courtroom. Because the two doctrines of structural error and ineffective assistance of counsel are intertwined, the Court will address these claims together.

Respondent contends that petitioner's public trial claim is waived because petitioner failed to object to the closure of the courtroom for the jury selection process.

"The central aim of a criminal proceeding must be to try the accused fairly." *Waller v. Georgia*, 467 U.S. 39, 46 (1984). The Sixth Amendment public-trial guarantee was created to further that aim. *Id.* (citing *Gannett Co. v. DePasquale*, 443 U.S. 368, 380 (1979)). A public trial helps to ensure that judge and prosecutor carry out their duties responsibly, encourages witnesses to come forward, and discourages perjury. *Waller*, 467 U.S. at 46. The violation of the constitutional right to a public trial is a structural trial error, not subject to the harmless error analysis. *Id.* at 49-50 & n.9.

A criminal defendant's Sixth Amendment right to a public trial is violated when the trial court excludes the public from the *voir dire* of prospective jurors, without considering reasonable alternatives to closure. *Presley v. Georgia,* 558

U.S. 209, 216 (2010). Under *Waller*, to justify the closure of a courtroom, "the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." *Waller*, 467 U.S. at 48. The structural error doctrine ensures certain basic, constitutional guarantees that define the framework of any criminal trial; structural error "affect[s] the framework within which the trial proceeds," rather than being "simply an error in the trial process itself." *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991). Denial of the right to a public trial is a structural error, but this right is subject to exceptions. A judge may deny a defendant his right to an open courtroom by making proper factual findings in support of the decision to close the courtroom. *See Waller,* 467 U.S. at 45.

Whether a defendant is entitled to an automatic reversal due to the closure of the courtroom depends on when the challenge to the closure of the courtroom was initially raised. "If an objection is made at trial and the issue is raised on direct appeal, the defendant generally is entitled to 'automatic reversal' regardless of the error's actual 'effect on the outcome.'" *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1903 (2017)(quoting *Neder v. United States*, 527 U.S. 1, 7 (1999)). If,

however, "the defendant does not preserve a structural error on direct review but raises it later in the context of an ineffective-assistance claim ... the defendant as a general rule bears the burden to meet two standards. First, the defendant must show deficient performance-that the attorney's error was 'so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Weaver*, 137 S. Ct. at 1910 (quoting *Strickland*, 466 U.S. at 687). "Second, the defendant must show that the attorney's error 'prejudiced the defense.'" *Id.* To demonstrate prejudice in most cases, the defendant must show "a reasonable probability that ... the result of the proceeding would have been different" but for attorney error. *Strickland*, 466 U.S. at 694.

The Supreme Court explained the rationale behind granting a reversal for a structural error when an objection is raised at trial and on direct review, in contrast to a later claim based on the ineffectiveness of trial counsel for failing to object to the closure of the courtroom, as follows:

> [W]hen a defendant objects to a courtroom closure, the trial court can either order the courtroom opened or explain the reasons for keeping it closed. When a defendant first raises the closure in an ineffective-assistance claim, however, the trial court is deprived of the chance to cure the violation either by opening the courtroom or by explaining the reasons for closure.
>
> Furthermore, when state or federal courts adjudicate errors objected to during trial and then raised on direct review, the systemic costs of

remedying the error are diminished to some extent. That is because, if
a new trial is ordered on direct review, there may be a reasonable
chance that not too much time will have elapsed for witness
memories still to be accurate and physical evidence not to be lost.
There are also advantages of direct judicial supervision. Reviewing
courts, in the regular course of the appellate process, can give
instruction to the trial courts in a familiar context that allows for
elaboration of the relevant principles based on review of an adequate
record. For instance, in this case, the factors and circumstances that
might justify a temporary closure are best considered in the regular
appellate process and not in the context of a later proceeding, with its
added time delays.

*Weaver,* 137 S. Ct. at 1912 (internal citations omitted).

Although the right to a public trial is a fundamental right, it can be waived

if a habeas petitioner either acquiesces to the closure of the courtroom or fails to

object. *See Johnson v. Sherry*, 586 F.3d 439, 444 (6th Cir. 2009)(citing *Freytag v.

Commissioner*, 501 U.S. 868, 896 (1991)("[T]he Sixth Amendment right to a trial

that is 'public,' provide[s] benefits to the entire society more important than many

structural guarantees; but if the litigant does not assert [it] in a timely fashion, he

is foreclosed."); *Peretz v. United States*, 501 U.S. 923, 936–37 (1991)(citing

*Levine v. United States*, 362 U.S. 610, 619 (1960)).  Other circuits have reached

the same conclusion. *See U.S. v. Reagan,* 725 F.3d 471, 488-89 (5th Cir.

2013)(defendants waived claim that right to public trial violated by the closing of

the courtroom during *voir dire*, hence, claim unreviewable on appellate review);

*U.S. v. Christi*, 682 F.3d 138, 142-43 (1st Cir. 2012)(defendant waived any claim of error in court limiting public access to courtroom during most of jury instructions by counsel's failure to object); *U.S. v. Rivera,* 682 F.3d 1223, 1232 (9th Cir. 2012)(defendant may forfeit the right to a public trial, either by affirmatively waiving it or by failing to assert it in a timely fashion).

Although structural errors are presumed to be prejudicial and thus not subject to harmless error review, such errors are nevertheless subject to the general rules of waiver, forfeiture, and default. *See Johnson v. United States*, 520 U.S. 461, 466 (1997)(waived or forfeited structural error subject to plain error review under Fed. R.Crim. P. 52(b)). *See also United States v. Suescun*, 237 F.3d 1284, 1288, n. 12 (11th Cir. 2001)("Structural defects do not absolve a defendant's waiver of a defense or objection.").

The fact that petitioner did not on the record expressly agree to the exclusion of the public from the jury selection likewise does not alter this analysis. Certain fundamental rights of a criminal defendant, such as the right to counsel or whether to plead guilty, cannot be waived by counsel without the express, knowing and voluntary consent of the defendant, *see New York v. Hill,* 528 U.S. 110, 114 (2000), but for other rights, "waiver may be effected by action of counsel." *Id.* The Supreme Court has noted that it has "in the context of a broad

array of constitutional and statutory provisions, articulated a general rule that presumes the availability of waiver," even when that waiver involves "the most basic rights of criminal defendants." *Id.* at 114. Moreover, "the lawyer has-and must have-full authority to manage the conduct of the trial.... [D]ecisions by counsel are generally given effect as to what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence." *Id.* at 115 (internal citations omitted).

Therefore, various federal circuit courts have held that "[a] defendant's attorney's waiver of the right to a public trial is effective on the defendant." *United States v. Hitt*, 473 F.3d 146, 155 (5th Cir. 2006)(citing *United States v. Sorrentino*, 175 F.2d 721, 723 (3d Cir. 1949); *Martineau v. Perrin*, 601 F.2d 1196, 1200–01 (1st Cir. 1979)). The Sixth Circuit in *Johnson v. Sherry, supra.,* essentially acknowledged that the petitioner's right to a public trial had been waived by counsel's failure to object to the closure of the courtroom. *Johnson,* 586 F.3d at 442. The Supreme Court has yet to hold that an attorney cannot waive his client's right to a public trial. *See Guyton v. Butler,* 490 F.App'x 331, 333 (11th Cir. 2012). Petitioner's failure to object to the closure of the courtroom during *voir dire* waives federal habeas review of his public trial claim. *Johnson,* 586 F.3d at 444.

Petitioner first raised his right to a public trial claim in his motion for relief from judgment. The trial court found that the closure was narrowly tailored and an overriding interest to insure the integrity of the trial existed, as follows:

> In this case, the trial court's closure of the courtroom during jury selection and voir dire was a procedural safeguard implemented to effectively protect and prevent jurors or material witnesses involved in the joint trial of defendants[] Maxey, Dunbar and Bennett from being privy to potentially sensitive information that could undermine the integrity of the trials and/or possibly prevent the jury from making a reliable judgment about the guilt or innocence of each defendant.
>
> Moreover, while a defendant has a compelling interest in having members of his family present during trial, the trial court's decision involved only a partial closure, not a total one. Thus, the court did not completely preclude members of defendant's family from being present. It appears that the trial court narrowly tailored its restriction on access by limiting the restriction to the voir dire proceedings only.
>
> In sum, there is no basis in the record for concluding that defendant's right to a public trial was violated. Therefore, defendant also cannot succeed on his related claims that defense and appellate counsel were ineffective for not objecting or raising this issue at trial or on appeal. On the basis of the record presented, any objection would have been futile. Counsel is not required to make a futile objection. Defendant's claim is without merit.

*People v. Maxey*, No. 09-12497-FC (Wayne County Cir. Ct., May 24, 2013), pp. 4-5 (internal citations omitted).

Petitioner argues in his habeas petition that trial counsel was ineffective for failing to object to the closure of the courtroom during *voir dire*.

First, although the trial court chose to partially close the courtroom during *voir dire*, trial counsel's decision to agree to the closure of the courtroom for a non-public *voir dire* could well have been a reasonable trial strategy for the purpose of obtaining more honest or forthright responses from jurors during such a non-public *voir dire.* This defeats petitioner's ineffective assistance of counsel claim. *See Horton v. Allen,* 370 F.3d 75, 82-83 (1st Cir. 2004); *see also Jones v. Bradshaw,* 489 F. Supp. 2d 786, 841 (N.D. Ohio 2007).

Secondly, at the time of petitioner's trial in 2009, there was some question as to whether the Sixth Amendment public trial right applied to the *voir dire* process. At the time of petitioner's trial, the Supreme Court had held that the First Amendment right of public access applied during *voir dire*, *see Press-Enter. Co. v. Super. Ct.*, 464 U.S. 501, 510-11 (1984), but one justice concurring in that holding suggested that the Sixth Amendment public trial right might have a more limited scope. *See Id.* at 516 (Stevens, J., concurring). *Presley* was not decided until 2010, after petitioner's trial. Because petitioner's counsel at the time of the trial in 2009 could have reasonably questioned whether petitioner had any constitutional right to an open courtroom during *voir dire,* counsel was not ineffective for failing to object to the closure of the courtroom during jury selection. *See Woodson v. Hutchinson,* 52 F.App'x 195, 198 (4th Cir. 2002).

Even if trial counsel was deficient for failing to object to the closure of the courtroom during *voir dire*, petitioner failed to show that he was prejudiced by counsel's failure to object. The fact that a structural error might have occurred does not mean that prejudice should be presumed, for purposes of petitioner's ineffective assistance of counsel claim. *See Harrison v. Woods*, No. 15-1046, 2015 WL 4923099, at *2 (6th Cir. Aug. 18, 2015)(citing *Premo v. Moore*, 562 U.S. 115, 127–28 (2011)). Petitioner would have to establish that he was actually prejudiced by counsel's failure to object to the closure of the courtroom. *See Harrison*, 2015 WL 4923099, at *2. Petitioner failed to allege, let alone establish, that he was actually prejudiced by the closure of the courtroom for jury selection. Because petitioner failed to show that a different result would have happened had trial counsel objected to the closure of the courtroom for jury selection, petitioner is not entitled to habeas relief on his ineffective assistance of counsel claim. *See id.*

### D. Claim # 4. The constructive denial of counsel claim.

Petitioner contends that he was constructively denied the assistance of counsel because his attorney was not appointed to represent him until the day of the preliminary examination.

The Supreme Court has held that in cases where a criminal defendant has

been denied counsel at a preliminary hearing, "the test to be applied is whether the denial of counsel ... was harmless error." *Coleman v. Alabama*, 399 U.S. 1, 11 (1970)(citations omitted); *see also Adams v. Illinois,* 405 U.S. 278, 282-83 (1972)("[T]he lack of counsel at a preliminary hearing involves less danger to 'the integrity of the truth-determining process at trial' than the omission of counsel at the trial itself or on appeal.")(internal quotation marks omitted). The Sixth Circuit has applied a harmless error analysis on habeas review of claims that a habeas petitioner was denied the right to counsel at a preliminary examination or hearing in a state criminal proceeding. *See Takacs v. Engle*, 768 F.2d 122, 124 (6th Cir. 1985); *McKeldin v. Rose*, 631 F.2d 458, 460–61 (6th Cir. 1980); *see also Dodge v. Johnson,* 471 F.2d 1249, 1252 (6th Cir. 1973)(record failed to establish that lack of counsel at preliminary examination prejudiced petitioner's rights at trial or in any way tainted finding of guilt).

Petitioner raised this claim in his post-conviction motion for relief from judgment. In denying the claim, the trial court judge found that petitioner failed to argue that he had been harmed by counsel's appointment on the day of the preliminary examination, in that three witnesses identified petitioner and defense counsel had "cross-examined [the witnesses] at length, in a manner not inartful." *People v. Maxey,* No. 09-12497-FC, pp. 6-7 (Wayne County Circuit Ct., May 24,

2013).

A review of the preliminary examination shows that petitioner's counsel extensively cross-examined the witnesses. Counsel elicited statements from Christopher Sims and Timothy Sims that they never saw petitioner at the house on the night of the shooting nor saw petitioner fire a gun. (Tr. 5/20/09, pp. 27-28, 76). Counsel also questioned Renea Sims extensively about the problems with her identification, getting her to admit that she was down on the ground both times when the shooting happened. Ms. Sims also admitted that she did not see who did the shooting the first time. She further testified that she wore reading glasses, that she was lying next to a car near a six foot tall fence when she saw the men running away, and that she never saw petitioner actually discharge a firearm, even though she saw him holding one. (*Id.* at 50-57). Counsel later opposed the bindover. (*Id.* at 83-84). Petitioner has failed to show that he was actually prejudiced by trial counsel's allegedly inadequate preparation time at the preliminary examination, so as to show that he was constructively denied the assistance of counsel; petitioner is not entitled to relief on his constructive denial of counsel claim. *See Burgess v. Booker*, 526 F.App'x 416, 432–33 (6th Cir. 2013).


**E.  Claim # 5.  The instructional error claim.**

Petitioner alleges that the trial court reversibly erred by instructing the jury on felonious assault or assault with a dangerous weapon as a lesser included offense of assault with intent to murder and assault with the intent to cause great bodily harm less than murder.

An erroneous jury instruction warrants habeas corpus relief only where the instruction "'so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)(quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). "[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned', but that it violated some [constitutional] right.'" *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). A jury instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *See Johnson v. Smith,* 219 F. Supp. 2d 871, 882 (E.D. Mich. 2002).

In the present case, there was sufficient evidence to support giving an instruction on the offense of assault with a dangerous weapon as a lesser offense. Under Michigan law, the elements of assault with a dangerous weapon are: (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery. *See Gardner v. Kapture,,* 261 F. Supp. 2d 793, 804 (E.D. Mich. 2003)(citing *People v. Lawton,*

196 Mich. App. 341, 349, 492 N.W.2d 810 (1992)).  An instruction on the lesser offense of assault with a dangerous weapon was appropriate because the jury could rationally determine from the evidence that petitioner did not intend to kill or do great bodily harm to two of the victims who were caught in the cross-fire but merely intended to put them "in reasonable apprehension of an immediate battery."  Because the evidence supported the giving of such an instruction, petitioner is not entitled to relief on his claim. *See McHam v. Workman,* 247 F.App'x 118, 120-21 (10th Cir. 2007)(murder defendant was not constitutionally entitled to preclude state trial court from *sua sponte* giving jury instruction on lesser included offense of manslaughter, where evidence was sufficient to support giving of such instruction).

### F.  Claim # 6.  The ineffective assistance of appellate counsel claim.

In his sixth claim, petitioner contends that appellate counsel was ineffective for failing to raise on his appeal of right claims 3, 4, and 5 contained in his habeas petition.

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985).  However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*,

463 U.S. 745, 751 (1983). Petitioner's third through fifth claims are without

merit. Because these claims are without merit, appellate counsel was not

ineffective in his handling of petitioner's direct appeal. "[A]ppellate counsel

cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'"

*Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010)(quoting *Greer v.*

*Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

The Court denies the petition for a writ of habeas corpus. The Court will

also deny a certificate of appealability. In order to obtain a certificate of

appealability, a prisoner must make a substantial showing of the denial of a

constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the

applicant is required to show that reasonable jurists could debate whether, or agree

that, the petition should have been resolved in a different manner, or that the

issues presented were adequate to deserve encouragement to proceed further.

*Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a

habeas petitioner's constitutional claims on the merits, the petitioner must

demonstrate that reasonable jurists would find the district court's assessment of

the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court

must issue or deny a certificate of appealability when it enters a final order

adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C.

foll. § 2254.

For the reasons stated in this opinion, the Court denies petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Johnson v. Smith,* 219 F. Supp. 2d at 885. The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## IV. CONCLUSION

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus. The Court further **DENIES** a certificate of appealability and leave to appeal *in forma pauperis*.

**SO ORDERED.**

s/Paul D. Borman
Paul D. Borman
United States District Judge

Dated: September 26, 2017

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 26, 2017.

s/Deborah Tofil
Case Manager
